UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY MILLER,

                Plaintiff,

        v.

BERN LOIBL, SHERRY-STAFFORD LOIBL,
and INTERNATURALLY, INC.,

                Defendants.

11 Civ. 2182

**OPINION**

       This is an action for copyright infringement brought by Gary Miller against Internaturally, Inc. and its owners Bern Loibl and Sherry Stafford-Loibl.  Miller and Internaturally both are in the business of selling movies and other materials promoting the naturist lifestyle – that is, materials promoting a life free from clothes.  In the course of this business both have developed a business relationship with a naturist filmmaker named Peter Dietrich and both have sold his work in North America.

       In the course of these dealings, Miller contends that he was granted the exclusive rights to distribute certain of Dietrich's films and photographs in North America.  Accordingly, he has registered and maintained the copyrights to them in the United States.  Internaturally, Miller claims, has infringed upon some or all of these copyrights by distributing several naturist films which consist largely of compilations of excerpts from

other Dietrich films, including those to which Miller owns the copyright, and by using the copyrighted photographs in promoting the allegedly infringing products.

Internaturally, however, claims that it was previously granted exclusive distribution rights to all of Dietrich's films in the United States. Therefore, Internaturally argues, Dietrich could never have conveyed to Miller the rights he purports to be vindicating in this suit. Internaturally brings counterclaims against Miller for breach of contract, tortious interference with prospective economic advantage and contract, and for an accounting of Miller's sales in violation of Internaturally's exclusive distribution rights.

Several motions are pending: on March 20, 2012, Miller moved for summary judgment on Internaturally's counterclaims. Both parties moved for leave to amend their pleadings on June 15, 2012. On July 15, 2012, Miller moved for summary judgment on the defendants' liability. On July 18, 2012, defendants cross-moved for summary judgment on Miller's claims. Finally, on August 13, 2012, defendants moved to strike Miller's affidavit in support of his July 15, 2012 motion, the affidavit of an expert witness, and Miller's July 25, 2012 request to supplement the record with the allegedly-infringed materials.

Defendants' motion to strike is granted with respect to the late submission of the allegedly-infringed films. For the reasons detailed below, this conclusion moots defendants' motion for summary judgment and, in turn, the remainder of their motion to strike. Miller may choose: he may either 1) submit the allegedly-infringed DVDs and reimburse defendants for the costs of preparing their motion to strike and their now-moot

motion for summary judgment or 2) adhere to the course he had set during discovery, to proceed in this action with the DVDs excluded from the record, and reimburse defendants only for the costs of preparing their motion to strike. Miller's motion for summary judgment on defendants' counterclaims is granted, and the counterclaims dismissed. Miller's motion for summary judgment on liability is denied. Miller's motion for leave to amend his pleadings is granted. Defendants' motion to amend their pleadings is denied.

Discovery may be reopened for the limited purpose of permitting Miller, if he chooses, to furnish copies of the allegedly-infringed work. If Miller does do, defendant may then move once more for summary judgment.

## Defendants' Motion to Strike

### FACTUAL BACKGROUND

Miller made his required initial disclosures to defendants on July 26, 2011 in which he identified DVDs of the infringed films as relevant materials. But he did not actually produce copies of the allegedly infringed films, claiming that defendants already possessed copies of them. Defendants requested these films in their first discovery request and their first set of interrogatories, both dated February 3, 2012. Miller objected to this request arguing once more that defendants already possessed copies of the DVDs at issue and asserting that defendants had also not produced copies of the infringing DVDs. In response to defendants' interrogatory, Miller produced a chart partially listing a minute-by-minute comparison of the allegedly infringing and infringed works, but he did not produce

the infringed works themselves.  Miller objected to providing additional details because to do so had "proven expensive."

On April 3, 2012 defendants responded with a demand that Miller provide a complete minute-by-minute accounting of the allegedly infringing portions of their films and a warning that they would move for summary judgment with respect to any title that Miller could not specifically demonstrate was copied.

Miller replied simply that he was familiar with the infringed and infringing work and that a minute-by minute accounting was not necessary.  Miller also contended here, and elsewhere, that the fact that the allegedly-infringing materials were, in fact, promoted as being composed of excerpts of other Dietrich films would be all the proof they needed to settle the factual question of infringement.  Defendants point out that the DVD jacket and promotional materials also describe the allegedly-infringing films as containing "many scenes unseen before."  Defendants further contend that these general promotional statements may not be precisely true and that, even if they are, this evidence is not enough to allow a fact-finder to determine exactly how many films were infringed, let alone which ones.

Finally, on April 6, 2012, defendants reiterated their discovery request for copies of the allegedly-infringed DVDs, but were met with the same objection.

Discovery closed on May 16, 2012.

However, on July 25, 2012, Miller wrote to the court to request permission to supplement the record with the infringed films.  Miller wrote: "[a]t the time I was preparing

plaintiff's summary judgment motion, I was concerned that the films might need to be a part of the record in case of a dispute about their content." This request came more than two months after the close of discovery and approximately one week after defendants had moved for summary judgment against Miller. Among other grounds, this motion sought summary judgment on exactly the grounds that defendants had apprised Miller of in their April 3, 2012 letter, i.e. that Miller had failed to prove infringement by submitting the infringing DVDs.

DISCUSSION

Federal Rule of Civil Procedure 26 requires that a party must provide either a copy or "a description by category and location" of any documents, information, or other tangible things that he has in his possession and that he may use to support his claims or defenses. A party's failure to disclose relevant information triggers "automatic sanctions"; among other possible sanctions, that party may be barred from using the withheld evidence to "supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). A district court has wide discretion in crafting sanctions under Rule 37 – even severe sanctions such as total preclusion – and accordingly its imposition of these sanctions is reviewable only for abuse of discretion. Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006).

In this case, the degree of prejudice to the defendant is unclear. Miller argues, with some plausibility, that defendants have had copies of the infringed works all along. Indeed,

they point to an email in which defendants describe having conducted their own comparison of the allegedly-infringed and infringing works.  Therefore, total preclusion of the allegedly infringed DVDs, potentially the lynchpin of Miller's case, is unnecessarily harsh.

However, regardless of whether defendants were indeed "hamstrung" in their ability to defend the suit by the withholding of the infringed DVDs, this much is clear.  Defendants were caused to waste their litigation resources due to Miller failure to comply with the discovery rules.

Defendants, in preparing their motion for summary judgment after the close of discovery, were entitled to rely on the completeness of the factual record at that point.  And there can certainly be no contention that Miller's need to introduce this evidence was unforeseeable.  Defendants explicitly communicated to Miller, before the close of discovery, that they intended to move for summary judgment specifically for lack of this and other evidence.

Miller, before the close of discovery, apparently decided that he would not need to rely on the films as evidence.  While that was his right, he may not, after repeated demands from defendants for timely production, reverse course after the close of discovery and after defendants had already moved for summary judgment.

Therefore, defendants' motion to strike Miller's submission of DVDs is granted, and defendants awarded the cost of preparing their motion to strike.  Miller may supplement the record with the allegedly-infringed films but, if he chooses to do so, he must also

reimburse the defendants for the cost of preparing their July 18, 2012 motion for summary judgment.  In either case, defendant's motion for summary judgment is denied as moot, but with leave to renew once plaintiff has either furnished the films or chosen, once and for all, not to do so.  In addition, this disposition renders moot defendants' motion to strike the Miller and Pierle affidavits, attached as they were to Miller's opposition to defendants' here-denied motion for summary judgment.  This motion to strike is also, therefore, denied.

## Miller's Motion for Summary Judgment on Defendants' Counterclaims

### FACTUAL BACKGROUND

Defendants bring three counterclaims against Miller: breach of contract, tortious interference with prospective economic advantage, tortious interference with contract, and for an accounting of unauthorized use of defendants' copyrighted materials.

Defendants' breach of contract counterclaim is based on the exclusive distribution agreement between Internaturally and Dietrich.  Miller, defendants claim, was aware of this contract but nonetheless attempted to purchase the rights to films covered by it.  Defendants claim that Miller now distributes these films inconsistently with defendants' exclusive distribution agreement with Dietrich.  Miller disputes whether the exclusive distribution agreement actually covered the work he distributed but, otherwise, these facts are undisputed.

Defendants' counterclaims for tortious interference with contract and prospective economic advantage are based on the same facts.  Defendants claim that Miller's dealings with Dietrich were inconsistent with their exclusive distribution agreement and were conducted wrongfully and with knowledge that Miller was interfering with defendants' ongoing contract and business relationship with Dietrich.

Finally, defendants' counterclaim for an accounting seeks a tabulation of Miller's sales of Dietrich titles inconsistent with their exclusive distribution agreement – that is, the sales that give rise to defendants' first three counterclaims.

### DISCUSSION

A state law cause of action is preempted by federal copyright law to the extent that "it is merely based on allegations that the defendant did something that the copyright laws reserve exclusively to the plaintiff." Am. Movie Classics Co. v. Turner Entm't Co., 922 F. Supp. 926, 931 (S.D.N.Y. 1996).  Under these circumstances, the federal copyright law can preempt both state breach of contract and tortious interference law.  See id. at 931-32.

The facts of Am. Movie Classics Co. are closely analogous to those in this case.  In Am. Movie Classics Co., American Movie Classics sued Turner Classic Movies for inducing Turner Entertainment to license certain films to them in violation of Turner Entertainment's exclusive distribution agreement with American Movie Classics.  American Movie Classics sued Turner Entertainment for breach of contract and sued Turner Classic

Movies for tortious interference.  <u>Id</u>. at 929.  The Second Circuit held that both claims were preempted by federal copyright law. <u>Id</u>. at 931-32.

The same result obtains here.  Here, as in <u>Am. Movie Classics Co.</u>, defendants' counterclaims allege nothing more than that Miller violated their exclusive distribution rights.  That they did so in violation of a contract does nothing to change this conclusion since the infringed contractual right is congruent with a right under copyright law.

Therefore, defendants' first three counterclaims are dismissed.  And, since the fourth counterclaim is a claim for accounting of Miller's sales in violation of the rights asserted by defendants' in the previous three counts, it is dismissed as well.

### Miller's Motion for Summary Judgment on Liability

Miller moves for summary judgment on liability.  Defendants oppose on the ground that their exclusive distribution agreement actually gave them the legal rights asserted by Miller, that Miller has not proven his ownership of the copyrights, that Miller has not proven copying, that Miller has committed copyright misuse, and because any copying by defendants as described by Miller would have been fair use.

Miller's motion for summary judgment is denied because there is a genuine factual dispute regarding the meaning (and, indeed, authenticity) of the agreement between Dietrich and Internaturally.  If the agreement is genuine and means what defendants claim it means, then Miller cannot maintain a claim for copyright infringement against

Internaturally because Internaturally is actually the owner of the copyrights that Miller seeks to enforce.

Miller's motion for summary judgment on liability appears to only concern itself with the matter of the allegedly-infringed films, and not the photos originally mentioned in his complaint but largely ignored in the parties' subsequent motions.  Therefore, it is construed as a motion for summary judgment only with respect to the alleged infringement of Miller's rights in the Dietrich films.

FACTUAL BACKGROUND

Defendants contend that, on March 19, 2002, they signed an agreement with Dietrich titled "Agreement of Exclusive Distribution Rights between Peter Dietrich (KCN Productions) and Internaturally, Inc."  The agreement reads, in its entirety:

> In consideration for the sum of US $6,000, advance payment toward future sales, KCN Productions and Peter Dietrich hereby grant Internaturally, Inc exclusive distribution rights in the USA for its family naturist films.  This agreement does not restrict Internaturally, Inc. from selling same in other countries where Peter Dietrich and KCN may have established other entities to market titles on an exclusive basis. Internaturally, Inc. will be responsible for the marketing of these films, which include replicating to VHS, packaging, advertising in print and on the World Wide Web.  Remuneration from sales of KCN/Dietrich is to be paid monthly in the form of royalties based on $1/3^{rd}$ the retail price that is established by Internaturally, Inc. This agreement is legal and binding and may only be terminated or altered by mutual consent between Peter Dietrich (KCN Productions) and Internaturally, Inc.

The agreement appears to have been signed by Bernard Loibl on March 18, 2002 and Dietrich on March 19, 2002.

Defendants argue that this agreement entitles Internaturally to exclusive distribution rights to all Dietrich titles in the United States.  Defendants have provided affidavits (and, in Bern Loibl's case, deposition testimony) by both parties to the contract, Dietrich and Bern Loibl, indicating that this is indeed their understanding of the contract's meaning.

Miller, however, argues that the contract has been fabricated for the purposes of defending this litigation.  Miller also argues that the course of dealing between Dietrich, defendants, and himself indicates that whatever agreement did exist between Dietrich and Internaturally in March of 2002 either did not cover all of Dietrich's work or was implicitly modified by the parties' course of dealing subsequently.  At most, Miller argues, the contract entitles Internaturally to distribute all films made by Dietrich bearing the KCN name, which would bear on only four of the 45 allegedly infringed films – the remaining 41 instead bear the name "AWWC."

In support of his contention that the contract is a fabrication, Miller points to emails exchanged between Bern Loibl and Dietrich.  On May 12, 2011 (43 days after Miller initiated this suit) Bern Loibl wrote to Dietrich

> I need a copy of our exclusive distribution agreement.  I lost it when we had a computer crash several years ago....If you can't find it, please send me a deposition that such an executive agreement has existed since the year 2002.  I believe that is accurate.

On May 13, 2011 Dietrich wrote back, in part:

> I've combed through all my documents and cannot find a copy of our initial agreement, sorry.  It was also lost in my robbery and computer crash.  Perhaps Andrii has a copy somewhere, but I doubt it.

Finally, on May 29, 2011, Dietrich replied again:

> Sadly Andrii has no copy of that elusive contract.  I was thinking, could we
> not 're-invent' it and date it from that period, or would that be too dishonest
> and unusable?  I did send you a declaration in which I said you had exclusive
> distribution rights from 2002.  Or would Cheryl possibly still have records in
> her files?

(Plf's Ex. 19).  A copy (or, as Miller maintains, a document masquerading as a copy) of that

elusive contract  was subsequently attached as Exhibit A of the defendants' answer eleven

days later on June 9, 2011.  Plaintiffs allege that this document is the "re-invention"

proposed by Dietrich, not the original contract defendants claim it to be.

In their depositions, however, the Loibls both testified that the contract was eventually

found in the Loibls' own files.  Sherry Stafford-Loibl testified that she and Bern Loibl

began searching when they were served with the complaint, though she did not become

aware of the complaint until sometime after the service date because somebody else in her

office signed for it.  She testified that the search took "a while" and that, though she could

not remember exactly how long it took, it "seemed like a week."  Bern Loibl testified that

the search took "about three days" after defendants' lawyers suggested that they might need

to see the original wording, but he does not indicate when that was.

Miller suggests that the Loibls' timelines do not add up: he argues that this testimony, if

true, would require that the contract have been found no later than April 24, five days after

the complaint was served.  Meanwhile, Miller argues, the evidence shows that Bern Loibl

emailed Dietrich asking for a copy of the contract on May 12, 2012, 23 days after

defendants were served with the complaint.  However the Loibls' testimony, described above, is much less precise than Miller implies and is not, strictly speaking, contradicted by the evidence Miller highlights – probably the most one could fairly say is that there is a slight tension between the testimony and the documentary evidence.

Finally, Miller points out that, though Bern Loibl testified that he had emailed Dietrich when the contract was found (and that this email had been produced to Miller in discovery), defendants have not in fact produced any such email.

The evidence regarding the meaning of the 2002 contract is conflicting.

On one hand, both Bern Loibl and Dietrich have sworn in affidavits that they understood the contract to cover all existing and future "family naturist" work by Dietrich. Bern Loibl also testified to this effect in his deposition.

However, emails between defendants, Miller, and Dietrich tell a more complicated story.  The record discloses several instances where Dietrich sold films to Miller instead of Internaturally because he needed money quickly; Miller, it would seem, was in the habit of paying a fixed amount up front for Dietrich's films but with no royalties, while Internaturally compensated Dietrich through ongoing royalty payments.  In multiple cases, Internaturally seems to assent to this arrangement acknowledging at one point that the contract covered only whatever titles Dietrich actually supplied to Internaturally.

Defendants do not dispute these facts, but they draw a different conclusion from them. Defendants argue that these were simply one-time concessions made by gentle-minded naturists.  Because the defendants were able to purchase titles for resale through Miller,

defendants argue that there was little financial reason for them to force the issue.  Buying

the titles from Miller simply meant that Internaturally would pay Miller's price per disk

instead of the $1/3^{rd}$ of the retail price they would have paid to Dietrich in royalties

otherwise.

Ultimately, however, defendants did confront Dietrich about his dealings with Miller.

The precipitating event appears to have been Dietrich's agreement to sell to Miller certain

films produced in connection with his trip to Brazil along with some AWWC and "Russian

Bare" films.  Dietrich seems to have given these titles to Miller for him to sell despite

Internaturally's having invested money promoting them.

However, never in the course of this discussion did defendants insist that Dietrich stop

selling his titles to Miller, or claim that their contract forbade him from doing so.  The

clearest reference to the contract comes in an August 25, 2009 email from Bern Loibl to

Dietrich which began:

> Please Peter, stop acting dumb.  You know exactly what you did. This is not
> about what you own, but about agreements you made with Internaturally.  If
> you wish to license or sell your titles you have every right.  But you are also
> responsible to inform us, so we can remove these titles from the ones we
> manage.  I will not promote AWWC titles that are not exclusive.

It seems clear that, at the time Bern Loibl wrote that email, he either did not believe or

did not wish to assert that, as he asserts now, their 2002 contract actually did prohibit

Dietrich from selling titles to Miller.  This email and another sent the next day also include

suggestions that Internaturally and Dietrich might enter into a new contract that would expressly prohibit Dietrich from selling titles to any other American distributor.

Finally, on March 1, 2011, in what appears to be the run-up to this litigation, Bern Loibl sent Miller an email which began "I don't doubt you are the owner of the titles Peter [Dietrich] sold you.  I don't question your copyright."

DISCUSSION

Summary judgment is appropriate under Fed.R.Civ.P. 56 if, on the entire record, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). It is the movant's burden to demonstrate that no such dispute remains. Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  The Court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir.1990).

Once the movant has borne this initial burden, the opposing party must produce sufficient evidence to permit a reasonable jury to return a verdict in its favor, identifying "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248, 256.  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Repp & K & R Music, Inc. v. Webber, 132 F.3d 882, 889 (2d Cir.1997).  Conclusory allegations will not suffice.  Id.

Here, is it clear that a factual dispute remains regarding the meaning of the exclusive distribution agreement.  Certainly the emails highlighted by Miller provide some evidence that the parties' course of dealing was inconsistent with the meaning attributed to it by defendants. However, this evidence is directly contradicted by testimony provided by both parties to the contract.  The meaning, then, of the contract as it was actually understood by the parties is subject to a judgment of the credibility of Dietrich and Loibl. And even if a fact-finder were to conclude that the parties' course of dealing had altered the contract, it would remain for a fact-finder to determine the contours of that new contract.  The evidence of record certainly does not, for example, disclose whether the parties' course of dealing indicated an intention to terminate the contract or whether the parties intended to carve out more limited exceptions from it.

Therefore, because resolution of this factual question is a prerequisite to granting judgment in Miller's favor, and a genuine dispute remains with regard to it, Miller's motion for summary judgment on liability is denied.

### The Parties' Motions to Amend Their Pleadings

Both Miller and defendants move to amend their pleadings.  Miller moves to add Internaturally LLC as a defendant in addition to the Loibls and Internaturally, Inc. Defendants move to add as a party Andrii Litovchenko, with whom Dietrich coauthored some of the works at issue, and to add a counterclaim for copyright infringement.  Both motions were filed before the June 18, 2012 amendment deadline.

## MILLER'S PROPOSED ADDITION OF INTERNATURALLY, LLC

Miller's proposal to add Internaturally, LLC as a defendant is granted.

Defendants protest that Miller should have known all along that Internaturally, LLC and not Internaturally, Inc. is the proper entity. This may or may not be true, but that in itself is not reason to deny Miller's timely request to add Internaturally, LLC to the action.

As defendants point out, such an amendment should be freely granted unless the non-movant can demonstrate that it is made in bad faith or that they would be unduly prejudiced by the amendment. City of New York v. Group Health, Inc., 649 F.3d 151, 157 (2d Cir. 2011). Defendants have shown neither: their arguments that this new party might have conducted litigation differently and that they may have contacted an insurance carrier are unavailing because they do not show that defendants – that is, those already named as defendants in this suit – would be prejudiced. These arguments only state the obvious fact that the new party will suffer the same inconvenience of defending a lawsuit as Internaturally, Inc. suffered.

It may be defendants' contention that the individual defendants will be prejudiced because they, as principles of both Internaturally, Inc. and Internaturally, LLC, would have defended the case differently had Internaturally, LLC been named. But this argument actually cuts against them. If, as this line of argument concedes, it is true that there is such an identity of control and interests between Internaturally, Inc. and Internaturally, LLC, then Internaturally LLC has been on notice all along that it might be named in this lawsuit. And, as for prejudice to the individual defendants, this argument asserts merely that they

would be prejudiced because they had assumed throughout this litigation that an amendment to name Internaturally, LLC would not be allowed.  If this is true, then certainly they may be prejudiced, but only by their own litigation strategy.

And defendants make no serious contention that the amendment is made in bad faith – they simply recite the various ways in which Miller could (or should) have learned of this new party before the beginning of litigation.  And, indeed, it appears there was ample information to allow Miller to discover this other entity before filing suit.  But it would be a much greater injustice to prevent Miller from amending his pleadings than to allow it. Weighed against these (largely abstract) arguments presented by defendants' is the possible result  that if Miller is not permitted to amend he may not be able to recover at all on his possible copyright claim, since it appears that Internaturally, Inc. may have been dissolved and that Internaturally, LLC actually was the distributor of the allegedly-infringing titles. Or, he may simply be forced to file a new, separate lawsuit, inevitably causing all the same harms that defendants warn of, in addition to a great loss of judicial economy.

This conclusion is bolstered by the fact, apparently uncontroverted, that Internaturally, LLC is, in practice, the same entity as Internaturally, Inc.  The same people manage both entities (i.e. the Loibls) and Internaturally, LLC appears to have been designed to be the successor entity of Internaturally, Inc. as the Loibls redistributed management responsibilities amongst themselves.

Therefore, Miller's motion to amend his complaint is granted.

18

## Defendants' Proposed Counterclaim for Copyright Infringement

Defendants' proposed addition of a counterclaim for copyright infringement is denied; it is subject to dismissal because defendants fail to allege which works Miller infringed.

A party's proposal to amend its pleadings may be denied if the proposed amendment would not survive a motion to dismiss.  Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).  In the case of an action for copyright infringement, this requires that a plaintiff allege "1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992) aff'd sub nom. Kelly v. L.L. Cool J, 23 F.3d 398 (2d Cir. 1994).[1]

Defendants' proposed amendment founders on the first prong.  It simply alleges that they possess an exclusive license to distribute all Dietrich films (regardless of whether they are KCN or AWWC films, and regardless of whether they were coauthored by Litovchenko) and that Miller has distributed and registered the copyrights to some of these films.  Perhaps, given the context of this litigation, defendants intended their counterclaim to be for Miller's infringement of defendants' copyright in the works that form the basis of Miller's suit against them.  Defendants' motion papers suggest that this is what they intended.  But, contrary to the suggestion in their motion papers, this is certainly not "made

---

[1] Incredibly, defendants dispute the presence of the word "specific" in the first element of the Kelly test.  They claim that Miller includes the word in the quotation in his brief in an attempt to mislead the court by misquoting the law. But, even more incredibly, it is actually the defendants who misrepresent the law – the court's quotation above, just like Miller's quotation in his opposition brief, is entirely correct.

clear in the proposed counterclaim." However, without a description in the pleadings of the works at issue more specific than "at least some of the Licensed Works," the counterclaim is subject to dismissal.

Therefore, defendants' proposed counterclaim against Miller is subject to dismissal and, accordingly, defendants request for leave to amend their pleadings is denied.

## DEFENDANTS PROPOSED ADDITION OF LITVOSHENKO AS A PARTY

Defendants contend that it is necessary to add Litvoshenko as a party to this litigation on two grounds. First, they allege that Litvoshenko coauthored some or all of the works at issue in this suit but that Litvoshenko was not a party to the agreement purporting to convey exclusive distribution rights to Miller. If this is the case, defendants contend, Miller can have no rights to assert against them. Second, defendants hypothesize that Litvoshenko may have a right to claim an accounting for Miller's unauthorized distribution of his works, an accounting for which defendants may somehow become responsible because, defendants claim, they are the true licensees of the copyrighted works.

A party must be joined when it would be impossible to afford complete relief among the existing parties otherwise. Fed. R. Civ. P. 19. But neither of defendants' theories requires joinder under this test, and neither implicate any considerations permitting joinder under Rule 20.

The factual question of whether Litvoshenko ever licensed his work to Miller is one amenable to resolution through discovery without adding him as a party. Indeed, this case

faces an analogous issue relating to Dietrich, Litvoshenko's co-author, but neither party asserts that it is necessary to add him as a party to this litigation in order to fully adjudicate the question of what rights he assigned to whom.

And the matter of defendants' obligation to Litvoshenko for an accounting is entirely hypothetical.  Litvoshenko has not actually made any demand for an accounting and, therefore, there is no actual dispute regarding any party's accounting obligations to Litvoshenko to justify burdening him with this suit.

Therefore, because defendants have no cause of action of their own to bring against Litvoshenko, Litvoshenko himself has not asserted any claims against the parties to this suit, and the conditions for required joinder of a party are not met, defendants' proposed addition of Litvoshenko as a party to this litigation is denied.

## Conclusion

Defendants' motion to strike is granted with respect to the late submission of the allegedly-infringed films.  For the reasons detailed below, this conclusion moots defendants' motion for summary judgment and, in turn, the remainder of their motion to strike.  These motions are, therefore, denied.  Miller may either 1) submit the allegedly-infringed DVDs and reimburse defendants for the costs of preparing their motion to strike and their now-moot motion for summary judgment or 2) adhere to the course he had set during discovery, to proceed in this action with the DVDs excluded from the record, and reimburse defendants only for the costs of preparing their motion to strike.  Miller's motion for summary judgment on defendants' counterclaims is granted, and the

counterclaims dismissed.  Miller's motion for summary judgment on liability is denied.

Miller's motion for leave to amend his pleadings is granted.  Defendants' motion to amend

their pleadings is denied.


So ordered.

Dated:   New York, New York
         March 13, 2013

Thomas P. Griesa
United States District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #: _____
DATE FILED: March 13, 2013
```

22